**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

                                     Case No. 06-14517

MARK R. COLANGELO and             Hon. Gerald E. Rosen
JILL J. COLANGELO,

       Debtors.
_____/

MARK R. COLANGELO,              Bankruptcy Case No. 05-55429
                                       Chapter 7
       Appellant,                 Adv. Proc. No. 06-4898
                                       Hon. Steven Rhodes

v.

SAUL EISEN,
UNITED STATES TRUSTEE,

       Appellee.
_____/

**OPINION AND ORDER AFFIRMING BANKRUPTCY**
**COURT'S DENIAL OF MOTION TO SET ASIDE DEFAULT JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 31, 2009          

PRESENT:  Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

In the present appeal, Debtor Mark R. Colangelo challenges the Bankruptcy

Court's decision to deny his motion to set aside a default judgment entered against him in

an adversary proceeding in which the United States Trustee sought to deny Debtor a

bankruptcy discharge.  In so ruling, the Bankruptcy Court determined that Debtor could

not establish a meritorious defense to the Trustee's claim, so that there was no reason to set aside the default judgment and allow Debtor to file an answer to the Trustee's complaint. Debtor now contends that the Bankruptcy Court erred by assessing the likelihood of success of his defense to the Trustee's claim, rather than simply inquiring whether the defense he proposed to assert, if proven, would suffice to defeat the Trustee's claim. As explained below, the Court finds that the Bankruptcy Court's inquiry was proper under the circumstances, and thus affirms the Bankruptcy Court's ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2005, Debtors Mark R. Colangelo and Jill J. Colangelo filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. They were represented by counsel. Their petition was accompanied by schedules in which they purported to identify all of their assets and liabilities, and they swore under penalty of perjury that the information in these schedules was "true and correct to the best of [their] knowledge, information, and belief." It is undisputed, however, that these schedules failed to disclose at least four known creditors that had sold concrete to Atina Concrete, an unincorporated business run by Debtor Mark Colangelo as a sole proprietorship.[1] A proposed Chapter 13 plan was confirmed by the Bankruptcy Court on August 10, 2005.

Shortly thereafter, in September of 2005, one of these creditors, Clawson Concrete

---

[1]Because this appeal has been brought solely by Mr. Colangelo and concerns only his ability to assert a meritorious defense to the Trustee's complaint, the Court will refer to him as the "Debtor" throughout the remainder of this opinion.

2

Company, brought a state-court suit against Debtor and Atina, alleging that they had
failed to pay for over $30,000 in goods and services provided by Clawson.[2]  Debtor and
his business filed an answer and counterclaim in October of 2005, and then reached a
settlement with Clawson in December of 2005, pursuant to which Debtor agreed to pay a
total of $27,000 to Clawson and agreed to the entry of a consent judgment in this amount
in the event that he failed to make the required payments.  According to Clawson, it was
unaware throughout this period that Debtor had filed for bankruptcy protection.  Rather, it
first became aware of Debtor's Chapter 13 proceeding in February of 2006, in the midst
of a garnishment effort to collect on the consent judgment entered against Debtor
pursuant to his settlement of the state-court suit.

Following this discovery, Clawson filed a March 2, 2006 motion to dismiss
Debtor's Chapter 13 proceeding and plan.  In response to this motion, Debtor admitted
that he had not disclosed his debt to Clawson in his Chapter 13 petition and
accompanying schedules, and he attributed this omission to his "belie[f] at the time of
filing that any outstanding debt to Clawson Concrete Company was a debt of his
corporation, Atina Cement Contractors, L.L.C."  (Debtor's 3/17/2006 Objection at ¶ 3.)[3]
Clawson's motion was heard on April 12, 2006, and the Bankruptcy Court elected to deny

---

[2]At least some portion of this debt evidently was incurred prior to Debtor's filing for
Chapter 13 relief.

[3]In fact, it appears that this company was not formed until late May or early June of 2005
— *i.e.,* after Debtor's May 11, 2005 filing for bankruptcy protection — and that Debtor operated
his business as a sole proprietorship up to that point.

the motion and allow the conversion of Debtor's Chapter 13 case to a case under Chapter 7.[4]  A short time later, Debtor updated his schedules to disclose the debts owed to Clawson and other concrete suppliers.

On July 5, 2006, Clawson filed an adversary complaint to deny Debtor a discharge of the debts owed to Clawson.  When Debtor failed to timely answer the complaint, the clerk entered his default on August 10, 2006, and a default judgment was entered against Debtor on August 31, 2006.[5]

On July 17, 2006, just after Clawson's filing, the United States Trustee also filed an adversary complaint for denial of discharge pursuant to 11 U.S.C. § 727(a)(4), alleging that Debtor had willfully failed to list Clawson and other concrete suppliers as creditors in his initial Chapter 13 petition.  When Debtor also failed to timely answer this complaint, the clerk entered his default on August 23, 2006.  The Trustee then filed an August 24, 2006 motion for entry of default judgment, and the Bankruptcy Court granted this motion

---

[4]Shortly after this conversion, Debtor filed an April 24, 2006 motion for fees and sanctions, charging that Clawson had violated the automatic bankruptcy stay through its February 2006 garnishment of funds from a bank account belonging to Debtor.  In this motion, Debtor once again acknowledged that his debt to Clawson had been omitted from his initial Chapter 13 petition and accompanying schedules, but he stated that this omission was "inadvertent[]."  (Debtor's 4/24/2006 Motion for Fees and Sanctions at ¶ 3.)  The Bankruptcy Court denied this motion, holding that the automatic stay had been waived and that Clawson had no obligation to return any monies obtained through the garnishment in question.

[5]No appeal was taken from this judgment, nor did Debtor seek to set aside this default judgment.

4

and entered a default judgment against Debtor on August 28, 2006.[6]

A few days later, on August 29, 2006, Debtor filed a motion to set aside the default judgment entered against him in the adversary proceeding brought by the Trustee. In support of this motion, Debtor argued that the Trustee would not be prejudiced by the delay of just a few days in his answer to the adversary complaint, and that this delay was not the result of any culpable conduct. Debtor further asserted that he had a meritorious defense to the Trustee's allegation that he had knowingly and fraudulently failed to disclose all of his creditors in his initial Chapter 13 petition and accompanying schedules.

On October 3, 2006, the Bankruptcy Court heard oral argument on Debtor's motion to set aside the default judgment. During the course of this hearing, counsel for the Trustee read from, and presented the court with a transcript of, a deposition of Debtor in which he testified that he omitted the debts owed to Clawson and other concrete suppliers from his Chapter 13 filing in an attempt "to keep the business debts separate from our personal." (10/3/2006 Hearing Tr. at 6.) Debtor further conceded at this deposition that his business was still operating as a "d/b/a" at the time of his bankruptcy filing, and that he distinguished between the "business" and "personal" debts at the time of filing "because that's the only thing we had that was bringing any money in was the business." (*Id.* at 7.)

---

[6]On August 25, 2006 — *i.e.,* in the interim between the clerk's entry of default and the court's entry of a default judgment — Debtor filed an untimely answer to the Trustee's adversary complaint, but did not move to set aside the clerk's entry of default or respond to the Trustee's pending motion for entry of a default judgment.

Citing this testimony, the Bankruptcy Court held at the conclusion of the October 3 hearing that Debtor had no meritorious defense to the Trustee's complaint.  In the court's view, this testimony evidenced Debtor's "intentional act . . . to keep the business debts out of the bankruptcy, not because he didn't understand that it was his responsibility to include business debts in the bankruptcy, but because he made the intentional and knowing decision not to include the business debts in the bankruptcy" because "that's what was bringing in money at the time."  (*Id.* at 13.)  In light of this conclusion, the Bankruptcy Court denied Debtor's motion to set aside the default judgment, and entered an October 5, 2006 order reflecting this ruling.  Debtor now appeals.

## II. <u>ANALYSIS</u>

### A.    The Standards Governing This Appeal

Although Debtor cites to both Fed. R. Civ. P. 55(c) and Fed. R. Civ. P. 60(b) as setting forth the applicable standards for determining whether to set aside a default judgment, Rule 55(c) itself expressly provides that the standards of Rule 60(b) control where, as here, a default judgment (as opposed to a clerk's default) has been entered.  *See* Fed. R. Civ. P. 55(c) (stating that a court "may set aside a default judgment under Rule 60(b)"); *see also Waifersong, Ltd. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Cir. 1992) (explaining that the "stricter standard" of Rule 60(b) "applies for setting aside a default once it has ripened into a judgment").  In his brief on appeal, Debtor evidently relies on subsections (1) and (6) of Rule 60(b) as warranting relief from the default judgment entered against him.  Under subsection (1), a court may provide relief from a

6

final judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect."

Fed. R. Civ. P. 60(b)(1).  Under subsection (6), relief from a judgment may be granted for

"any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "The party seeking to

invoke [Rule 60(b)] bears the burden of establishing that its prerequisites are satisfied."

*McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc.,* 298 F.3d 586, 592 (6th

Cir. 2002).

      Because Rule 60(b) "allows for some discretion in determining whether to grant . .

. relief," the Bankruptcy Court's decision to deny this relief is reviewed "for an abuse of

discretion."  *McCurry,* 298 F.3d at 592.  The Sixth Circuit has explained:

> A finding of an abuse of discretion must rest upon a definite and firm
> conviction that the trial court committed a clear error of judgment.  This
> may occur where, for example, the [Bankruptcy] Court applies the incorrect
> legal standard, misapplies the correct legal standard, or relies upon clearly
> erroneous findings of fact.

*McCurry,* 298 F.3d at 592 (internal quotation marks and citations omitted).  "Moreover,

in the specific context of relief from a final judgment or order," the Sixth Circuit has

emphasized that such relief "is circumscribed by public policy favoring finality of

judgments and termination of litigation."  *McCurry,* 298 F.3d at 592 (internal quotation

marks and citation omitted).  "Rule 60(b) reflects this public policy by requiring greater

specificity from a moving party before a court will set aside a default judgment."

*Waifersong,* 976 F.2d at 292.

**B.      The Bankruptcy Court Did Not Abuse Its Discretion in Denying Debtor's
         Rule 60(b) Motion for Relief from the Default Judgment.**

In their briefs on appeal, both sides agree that the Bankruptcy Court properly looked to the Sixth Circuit's decision in *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir. 1983), for the factors to consider in deciding whether to set aside the default judgment against Debtor.  In particular, *United Coin Meter* identifies three such factors:  (i) "[w]hether the plaintiff will be prejudiced," (ii) "[w]hether the defendant has a meritorious defense," and (iii) "[w]hether culpable conduct of the defendant led to the default."  *United Coin Meter*, 705 F.2d at 845.  The Bankruptcy Court found that the Trustee would not be prejudiced if the default judgment were set aside, and that Debtor could not be charged with "culpable conduct," at least as the court (and the parties) understood the standards for assessing Debtor's culpability.[7] (*See* 10/3/2006 Hearing Tr. at 11-12.)  Nonetheless, the Bankruptcy Court concluded that Debtor had no meritorious defense to the Trustee's complaint.  Accordingly, this Court's analysis begins with this second prong of the *United Coin Meter* standard.

As Debtor correctly observes, "[i]n determining whether a defaulted defendant has a meritorious defense[,] likelihood of success is not the measure."  *United Coin Meter*, 705 F.2d at 845 (internal quotation marks, alteration, and citation omitted).  "Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced."  705 F.2d at 845.  "The key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result

_____

[7]As discussed below, the Court does not wholly share the understanding of the parties and the Bankruptcy Court on this point.

8

achieved by the default." *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 399 (6th Cir. 1987) (internal quotation marks and citation omitted).

In arguing that this standard has been met here, Debtor contends that the Bankruptcy Court impermissibly assessed the likelihood of success of his proposed defense, rather than simply inquiring whether the defense he has alleged, if proven, would be a legally sufficient defense to the claims asserted in the Trustee's complaint. In support of this contention, Debtor points to the Bankruptcy Court's consideration of his deposition testimony, in which he explained the reasons for the omissions from his Chapter 13 filing. Debtor further cites the Bankruptcy Court's reasoning that if "the U.S. Trustee had filed a motion for summary judgment based on [Debtor's] deposition after an answer asserting [the defense] that the debtor now asserts, the Court certainly would grant a summary judgment." (10/3/2006 Hearing Tr. at 13-14.) In Debtor's view, all of this suggests that the Bankruptcy Court prejudged the prospects for the success of his proposed defense, rather than merely considering whether this defense, on its face, was a legally sufficient rejoinder to the claims brought by the Trustee.

Yet, to the extent that Debtor suggests that a court impermissibly measures the "likelihood of success" of a defense whenever it consults the record in any way as part of its "meritorious defense" inquiry, this Court cannot agree. To be sure, in many cases where a default judgment has been entered, there will be nothing in the record for a court to consider apart from the plaintiff's complaint and the defendant's proposed answer. It does not follow, however, that a court must turn a blind eye to any evidentiary record that

9

happens to be available in a given case.  If, for example, Debtor had ***expressly admitted***, at some earlier point in the bankruptcy proceedings, that he had "knowingly and fraudulently" omitted some of his debts from his Chapter 13 filing, *see* 11 U.S.C. § 727(a)(4), this Court is not aware of any authority that would prohibit the Bankruptcy Court from considering this testimony as part of its "meritorious defense" inquiry, and would instead mandate that the court accept at face value a later assertion — in an answer, and thus not under oath — that flatly contradicts his earlier sworn testimony.

To the contrary, the relevant case law supports the course of action taken by the Bankruptcy Court here.  A number of courts, including the Sixth Circuit, have held that "general denial[s]" alone, without even a "suggestion" of supporting evidence, do not suffice to establish the existence of a meritorious defense that warrants setting aside a default judgment.  *Smith v. Commissioner,* 926 F.2d 1470, 1480 (6th Cir. 1991) (internal quotation marks and citation omitted); *see also Clarendon Ltd. v. Foster,* No. 92-5626, 1993 WL 339703, at * (6th Cir. Sept. 2, 1993) (noting that the defaulting party in that case "did not address any means by which he would dispute the allegations in the complaint other than to deny them generally"); *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.,* 375 F.3d 922, 926 (9th Cir. 2004); *Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir. 1994); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir. 1993).  As one court has explained, "[a]lthough in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts."  *Sony Corp. v. Elm State*

10

*Electronics, Inc.,* 800 F.2d 317, 320-21 (2d Cir. 1986); *see also Clarendon Ltd.,* 1993 WL 339703, at *7 (quoting with approval this language from *Sony*).  More generally, the Sixth Circuit has observed that "[s]imple judicial economics fuels the rationale for the meritorious defense requirement," because "opening a default judgment would represent a fruitless gesture if it could not conceivably affect the outcome of the suit."  *Valvoline Instant Oil Change Franchising, Inc. v. Autocare Associates, Inc.,* No. 98-5041, 1999 WL 98590, at *5 (6th Cir. Jan. 26, 1999) (internal quotation marks and citation omitted).

Under these principles, there surely was no reason why the Bankruptcy Court could not look beyond Debtor's bare denials in his proposed answer,[8] and instead ask whether the existing record precluded any "possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."  *INVST Financial Group*, 815 F.2d at 399.  As is evident from the above recitation of facts, the record was far from silent as to possible explanations for Debtor's omissions from his Chapter 13 filing — apart from Debtor's deposition testimony, he and his counsel had addressed these omissions in at least two court filings — and it was appropriate for the Bankruptcy Court to evaluate Debtor's general denial in light of this evidence.  Moreover, the Bankruptcy Court's analogy to summary judgment principles was apt, where the Sixth Circuit has instructed that "[a]mbiguous or disputed facts must be construed in the light most

---

[8]This is precisely what Debtor offered — in his proposed answer to the Trustee's allegation that he had willfully failed to disclose four creditors in his Chapter 13 filing, Debtor responded with the single word, "Denied."

11

favorable to the defaulted party" when testing the meritoriousness of a proposed defense. *Williams v. Meyer,* 346 F.3d 607, 614 (6th Cir. 2003) (internal quotation marks, alteration, and citation omitted).

Accordingly, this Court discerns no error in the manner in which the Bankruptcy Court framed the "meritorious defense" inquiry, nor in its resort to the record as part of this inquiry.  The remaining question, then, is whether the Bankruptcy Court erred in concluding, in light of this record, that Debtor could not hope to prevail in his proposed defense.  As noted, the Bankruptcy Court relied chiefly on Debtor's deposition testimony, in which he (i) acknowledged that his business was "still a d/b/a" at the time of his Chapter 13 filing, (ii) admitted that he had not listed debts owed to four cement suppliers in this filing, (iii) explained that this omission was because "[w]e were trying to keep the business debts separate from our personal," and (iv) stated that the business and personal debts were segregated "because that's the only thing we had that was bringing any money in was the business."  (10/3/2006 Hearing Tr. at 6-7.)

Apart from this testimony, the record includes several other items that bear upon Debtor's intent in omitting certain of his debts from his Chapter 13 filing.  First, of course, there is his flat denial in his proposed answer of the Trustee's allegation that he "willfully failed to list" certain creditors in this filing.  Next, there is the explanation of his counsel, at the hearing on his motion to set aside the default judgment, that "[a]t the time [Debtor] filed his bankruptcy petition, he thought business debts were not a part of his personal debt, he thought they were business debts."  (*Id.* at 7.)  Debtor also addressed

12

this subject in two court filings:  (i) in objections to Clawson's motion to dismiss, where

he cited his "belie[f] at the time of filing that any outstanding debt to Clawson Concrete

Company was a debt of his corporation, Atina Cement Contractors, L.L.C.," (Debtor's

3/17/2006 Objections at ¶ 3), and (ii) in a motion for fees in sanctions, where Debtor

stated that his omission of Clawson from his initial Chapter 13 filing was "inadvertent,"

(Debtor's 4/24/2006 Motion for Fees and Sanctions at ¶ 3.)

      Viewing this record in light of the substantive standards that governed the

Trustee's adversary complaint for denial of discharge,[9] this Court cannot say that the

Bankruptcy Court erred in determining that Debtor lacked a meritorious defense to this

complaint.  The Trustee's complaint asserted that denial of discharge was warranted

under 11 U.S.C. § 727(a)(4)(A), which provides, in relevant part, that "[t]he court shall

grant a debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in

connection with the case[,] made a false oath or account."  To deny Debtor a discharge

under this provision, the Trustee had to show (i) that Debtor made a statement under oath,

(ii) that the statement was false, (iii) that Debtor knew the statement was false, (iv) that

Debtor made the statement with fraudulent intent, and (v) that the statement related

materially to the bankruptcy case.  *See Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685

(6th Cir. 2000).  In the present appeal, Debtor contends that he has presented a

---

[9]Notably, Debtor has not addressed these substantive standards in his submissions on
appeal, but is content to rest on his general denial that he had the requisite intent to warrant
denial of discharge.

meritorious defense as to the fourth of these elements, citing his denial in his proposed answer that his omission of debts from his Chapter 13 filing was the product of fraudulent intent.

Debtor, of course, has not expressly admitted to any fraudulent intent in his bankruptcy filing, whether in his deposition testimony or elsewhere in the record. Nonetheless, the courts have recognized that "[a] debtor's intent may be inferred from circumstantial evidence or from the debtor's course of conduct." *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999) (internal quotation marks and citations omitted). Moreover,"[a] reckless disregard as to whether a representation is true will . . . satisfy the intent requirement." *In re Keeney,* 227 F.3d at 686. In contrast, "a debtor is entitled to discharge if false information is the result of mistake or inadvertence." *In re Keeney,* 227 F.3d at 686. While the debtor's intent "is a question of fact," 227 F.3d at 685, this does not preclude a determination of fraudulent intent as a matter of law if "all reasonable inferences defeat the claims of one side," or "if a denial . . . is utterly implausible, in light of conceded or irrefutable evidence that no rational person could believe it." *Sicherman v. Rivera (In re Rivera),* 356 B.R. 786, 2007 WL 130415, at *6 (B.A.P. 6th Cir. Jan. 11, 2007).

The Bankruptcy Court did not err by, in essence, determining as a matter of law that Debtor's omissions from his Chapter 13 filing were the product of fraudulent intent, such that there was no possibility that he could establish a meritorious defense to a § 727(a)(4) denial of discharge. Although Debtor's flat denial in his proposed answer to

14

the Trustee's complaint provides no clue as to precisely how he would explain the omissions from his Chapter 13 filing, his attorney stated at the October 3, 2006 hearing that Debtor lacked the requisite fraudulent intent because "[a]t the time he filed his bankruptcy petition, he thought business debts were not a part of his personal debt, he thought they were business debts." (10/3/2006 Hearing Tr. at 7.) When asked by the Bankruptcy Court to identify anything in the record, beyond Debtor's bare denial in his proposed answer, that might evidence Debtor's lack of fraudulent intent at the time of filing, Debtor's counsel could not do so, but instead cited the testimony that would be offered in an eventual adversary trial. (*Id.* at 8-9.)

Yet, as the Bankruptcy Court observed, Debtor already had been afforded an opportunity to testify about his intent at the time of filing, and this testimony simply fails to support the theory of defense offered by counsel at the October 3 hearing. If Debtor believed that he was not obligated to disclose what he characterized as "business debts" in his Chapter 13 filing — whether because he mistakenly believed that his business had a separate corporate existence at this time, or because he did not understand the legal implications of operating his business as a sole proprietorship — it presumably would have been a simple matter to say so at his deposition. Instead, Debtor first confirmed that his business was a d/b/a at the time of filing, and then, when asked "whose idea" it was to distinguish between business and personal debts at the time of filing, he responded, "[B]ecause that's the only thing we had that was bringing any money in was the business." (*Id.* at 7.) As the Bankruptcy Court explained, this testimony does not

15

evidence any lack of understanding of Debtor's "responsibility to include business debts in the bankruptcy," but rather shows that Debtor "made the intentional and knowing decision not to include the business debts in the bankruptcy" because "that's what was bringing in money at the time."  (*Id.* at 13.)

The courts have confirmed that such an inability to provide a straightforward, innocent explanation constitutes evidence of fraudulent intent.  In *U.S. Trustee v. Halishak (In re Halishak),* 337 B.R. 620, 629 (Bankr. N.D. Ohio 2005), for example, the court observed that "in assessing the credibility of [a debtor's] explanation, the Court will not engage in speculation for the debtor, as it is the debtor, and the debtor alone, who is in the best position to know of and be able to explain the event(s) in question."  *See also Khalil v. Developers Surety & Indemnity Co. (In re Khalil),* 379 B.R. 163, 176 (B.A.P. 9th Cir. 2007) (noting that a "debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions" can serve as evidence of an intent to deceive (internal quotation marks and citation omitted)).  Similarly, in *Roudebush v. Sharp (In re Sharp),* 244 B.R. 889, 894 (Bankr. E.D. Mich. 2000), the court explained that the debtor's testimony as to his concealment and omissions "was not consistent with the responses that might be expected of an honest and forthright person."

Debtor's testimony also must be considered in light of his presumed knowledge of his own business affairs as the owner of Atina Concrete — a business that he converted to corporate form less than a month after his bankruptcy filing.  *See In re Hamo,* 233 B.R. at 725 (citing the debtor's position as president of a company as evidence that he had

16

fraudulently failed to disclose financial information relating to this company); *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1989) (citing the debtor's "full knowledge of the intricacies" of a business arrangement that he had "helped to put . . . together" but then failed to disclose).  Moreover, the testimony itself discloses a motive to conceal, as Debtor acknowledged that his business was "the only thing we had that was bringing any money in" at the time of his bankruptcy filing.  *See In re Khalil,* 379 B.R. at 176 (observing that "[m]otive can support a finding of knowing and fraudulent intent"); *In re Halishak,* 337 B.R. at 631 (same); *Garcia v. Coombs (In re Coombs),* 193 B.R. 557, 565 (Bankr. S.D. Cal. 1996) (noting that an inference of fraud may arise "if the nature of the [omitted] assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal").

Beyond Debtor's deposition testimony, the record includes other evidence of fraudulent intent.  First and foremost, there is Debtor's own series of shifting explanations for his omissions from his Chapter 13 filing, including:  (i) his statement, in his objections to Clawson's motion to dismiss, as to his "belie[f] at the time of filing that any outstanding debt to Clawson Concrete Company was a debt of his corporation, Atina Cement Contractors, L.L.C.," (Debtor's 3/17/2006 Objections at ¶ 3), and (ii) his characterization of these omissions as "inadvertent" in a court filing just over a month later, (Debtor's 4/24/2006 Motion for Fees and Sanctions at ¶ 3).  These explanations are inconsistent with each other ***and*** with his most recent excuse, as conveyed through

17

counsel at the October 3 hearing — namely, that he believed that he did not need to disclose the debts owed by his sole proprietorship. *See In re Rivera,* 2007 WL 130415, at *7 (finding that a debtor's "convenient later explanation" that contradicted his earlier deposition testimony "demonstrates a reckless indifference to the truth" which "is tantamount to fraud"). Next, there is the fact that Debtor was represented by counsel at the time of his bankruptcy filing, and therefore had the means to determine precisely which debts he had the obligation to disclose. Finally, while Debtor ultimately did amend his schedules to disclose the debts owed to Clawson and other concrete suppliers, he did so only after Clawson filed a motion to dismiss his Chapter 13 proceeding and plan for failure to disclose this creditor in his bankruptcy filings. Under this record, the Court cannot say that the Bankruptcy Court erred in concluding that Debtor could not establish the existence of a meritorious defense to the "fraudulent intent" element of the Trustee's claim under § 727(a)(4).

Alternatively, even if the Bankruptcy Court erred in its determination that Debtor lacked a meritorious defense, its ruling may be affirmed on another ground. In his motion requesting that the Bankruptcy Court set aside the default judgment, Debtor argued that the third, "culpable conduct" prong of the *United Coin Meter* test required a showing that Debtor had "display[ed] either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *INVST Financial Group,* 815 F.2d at 399 (internal quotation marks and citation omitted). The Bankruptcy Court, in turn, echoed this "intent to thwart or reckless disregard" standard in determining that

18

Debtor could not be charged with culpable conduct in the circumstances leading up to the entry of the default judgment.  (*See* 10/3/2006 Hearing Tr. at 11-12.)

This, however, is not the proper standard for assessing Debtor's "culpable conduct" under the third prong of the *United Coin Meter* test.  Rather, as the Sixth Circuit has explained, the "culpable conduct" inquiry is quite different where, as here, a party is seeking relief from a default judgment (as opposed to a clerk's default):

> When asked to set aside an entry of default, a court considers the [third] factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief.  But when it is a judgment the defendant is seeking to avoid, the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry.  When relief is sought under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence, surprise, or excusable neglect."  Furthermore, while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when a court initially proceeds . . . under Rule 60(b)(1).  That is because the rule mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect.  It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors:  the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.

*Waifersong,* 976 F.2d at 292 (footnote omitted); *see also Manufacturers' Industrial Relations Association v. East Akron Casting Co.,* 58 F.3d 204, 209 (6th Cir. 1995) (explaining that *Waifersong* "clarified" the "culpable conduct" prong of the *United Coin Meter* test in cases involving default judgments).

Measured under this correct standard, Debtor has failed to establish a basis for setting aside the default judgment that can withstand scrutiny under Rule 60(b)(1).  In the

19

motion he filed with the Bankruptcy Court, Debtor explained that his failure to timely
respond to the Trustee's complaint was due to his effort to "retain an attorney that was
affordable within his budget."  (Debtor's 8/29/2006 Motion to Set Aside Default
Judgment, Br. in Support at 4.)  Counsel for the Trustee further elaborated on this point at
the October 3 hearing:

> [In] my conversation with counsel for debtor, . . . he indicated that the
> debtor was — was intending to retain them in this matter, could they have
> extra time.  And I said the United States Trustee's office does not control
> the amount of time in this — in this matter.  The time is set by statute and
> rule.  The clerk's office enters a default.
>
> We don't have control over that.  If you wish to have extra time,
> make an appearance and I will enter into a stip agreeing to extra time.
> Counsel was reluctant to go that route, did not want to enter an appearance
> that he couldn't back out of until he got paid, until he got retained.
>
> I understood that, but I wasn't going to give extra time to someone
> who was a stranger to the file.  No appearance, no stipulation no — no
> additional time built into this adversary proceeding.
>
> * * * *
>
> This debtor was aware of the duty to answer this complaint in a
> timely manner, consulted with counsel, counsel contacted me, they were
> aware of it.  This isn't a matter of the debtor didn't — debtor didn't
> understand the importance of it.  He got the service of process, he consulted
> an attorney, they delayed at their own peril filing an answer, the answer was
> not filed.

(10/3/2006 Hearing Tr. at 3-5.)  Debtor's counsel did not dispute any of this at the
hearing, but merely added that he was relying on an assurance that he thought the
Trustee's counsel had given that he would be notified when any "default motion was
going to be entered."  (*Id.* at 9-10.)

Under this record, it seems evident that the default judgment against Debtor was the product of his counsel's neglect or, alternatively, his counsel's mistaken understanding of (i) the consequences of a failure to timely respond to the Trustee's complaint and (ii) the proper steps to take to mitigate this failure.  Neither of these excuses suffices, however, to secure relief from a default judgment under Rule 60(b)(1). As to the former, the Supreme Court has emphasized that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 396, 113 S. Ct. 1489, 1499 (1993).  Thus, "the proper focus is upon whether the neglect of [the client] *and their counsel* was excusable." *Pioneer Investment Services,* 507 U.S. at 397, 113 S. Ct. at 1499.  While it is understandable that Debtor's counsel wished to have an assurance of payment before entering an appearance on Debtor's behalf, this did not obviate the need to ensure that a prospective client — on whose behalf, after all, counsel had interceded with the Trustee's attorney — avoided a default while payment terms were being negotiated.  Plainly, counsel could have taken the limited steps that were necessary to avoid such a default, and then sought to withdraw his appearance if he and Debtor remained unable to reach a suitable arrangement for his services.  Moreover, as one court has observed, there is "no authority" for the proposition that a client may be "excused from responding to the complaint because he failed to reach an agreement regarding compensation with his attorney." *Tullock v. Hardy (In re Hardy),* 187 B.R. 604, 610 (Bankr. E.D. Tenn. 1995).

Alternatively, Debtor's default could be attributable to his counsel's failure to fully appreciate the legal consequences of inaction.  In particular, counsel seemed to suggest at the October 3 hearing that he anticipated some sort of notice and opportunity to act before a default judgment was entered against Debtor.  Yet, Debtor has not identified any procedural infirmity in the entry of the default judgment against him, nor has he suggested any way in which the Trustee or the Bankruptcy Court might have deviated from the pertinent rules and legal standards governing this process.  Any surprise, then, must have been due to Debtor's counsel's mistaken understanding of these rules and standards, or his failure to ascertain how they would operate in the present case.  The Sixth Circuit has expressly held that "neither strategic miscalculation nor counsel's misinterpretation of the law warrants relief from a judgment" under Rule 60(b)(1).  *McCurry,* 298 F.3d at 593; *see also FHC Equities, L.L.C. v. MBL Life Assurance Corp.,* 188 F.3d 678, 684-87 (6th Cir. 1999).  Accordingly, Debtor has failed to identify any circumstances leading to the default judgment against him that would qualify as "mistake, inadvertence, surprise, or excusable neglect" within the meaning of Rule 60(b)(1).

Finally, Debtor suggests that relief should be available under Rule 60(b)(6), in light of the "Sixth Circuit preference that cases be tried on their merits."  (Appellant's Br. at 13.)  Yet, as explained in *Waifersong,* 976 F.2d at 292, such generalized appeals to the equities do not obviate the need to establish at least one of the grounds set forth in Rule 60(b) in order to obtain relief from a default judgment.  Moreover, Sixth Circuit precedent is clear that "subsection (b)(6) of [Rule 60] applies only in exceptional or extraordinary

22

circumstances which are not addressed by the first five numbered clauses of the Rule."
*McCurry,* 298 F.3d at 595 (internal quotation marks and citation omitted).  Because the
grounds for relief asserted by Debtor here "fit quite comfortably within the range of
circumstances addressed in Rule 60(b)(1)," he cannot "invoke subsection (b)(6) to grant
relief that is foreclosed under subsection (b)(1)."  *McCurry,* 298 F.3d at 596.

## III. <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Bankruptcy Court's

October 5, 2006 order denying Debtor's motion to vacate or set aside the default

judgment is AFFIRMED.


<u>s/Gerald E. Rosen</u>
Chief Judge, United States District Court

Dated:  March 31, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 31, 2009, by electronic and/or ordinary mail.

<u>s/LaShawn R. Saulsberry</u>
Case Manager